Lindsay G. Leavitt (Bar No. 029110)
lindsay.leavitt@gknet.com
Erin T. Jenkins (Bar No. 039689)
erin.jenkins@gknet.com
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016
Telephone:    (602) 530-8000
*Attorneys for Defendants/Counterclaimants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VAI Resort, LLC, an Arizona limited liability company, | No. 2:25-cv-02201-ROS |
| Plaintiff, | **DEFENDANTS' ANSWER AND COUNTERCLAIMS** |
| v. | |
| Scott Hillig, a married man; Dessin Haus Collective, LLC, a Tennessee limited liability company; DH Companies, LLC, a Virginia limited liability company, | |
| Defendants. | |
| Scott Hillig, a married man; Dessin Haus Collective, LLC, a Tennessee limited liability company; DH Companies, LLC, a Virginia limited liability company, | |
| Counterclaimants, | |
| v. | |
| VAI Resort, LLC, an Arizona limited liability company; Tommy Fisher and Candice Fisher, a married couple; John Does I-X; Jane Does I-X; Black Corporations I-X; and ABC Partnerships I X, | |
| Counterdefendants. | |

Defendants Scott Hillig ("Hillig"), Dessin Haus Collective LLC ("Dessin Haus"),

10453169v2/43433-0001

and DH Companies, LLC ("DH") (collectively "Defendants"), by and through their undersigned counsel, for their answer to Plaintiff VAI Resort, LLC's ("Plaintiff" or "VAI") Complaint, admit, deny, and allege as follows:

1. Defendants admit the allegations contained in Paragraph 1.

2. Defendants admit the allegations contained in Paragraph 2.

3. Defendants deny the allegations in Paragraph 3.

4. Defendants admit the allegations contained in Paragraph 4.

5. Defendants deny the allegations in Paragraph 5.

6. Defendants admit the allegations in Paragraph 6.

7. Defendants deny the allegations in Paragraph 7.

8. In response to Paragraph 8, Defendants admit that the parties had business dealings in Maricopa County but deny that they committed any acts or omissions giving rise to liability.

9. Defendants admit that Arizona District Court is the proper venue for this dispute.

10. Defendants admit that the Arizona District Court has jurisdiction over this dispute.

11. Defendants deny the allegations in Paragraph 11.

12. Defendants deny the allegations in Paragraph 12.

13. Defendants lack sufficient information or knowledge to form a belief as to the allegations contained in Paragraph 13 and therefore deny the same.

14. Defendants lack sufficient information or knowledge to form a belief as to the allegations contained in Paragraph 14 and therefore deny the same.

15. Defendants lack sufficient information or knowledge to form a belief as to the allegations contained in Paragraph 15 and therefore deny the same.

16. Defendants lack sufficient information or knowledge to form a belief as to the

2

10453169v2/43433-0001

allegations contained in Paragraph 16 and therefore deny the same.

17.    Defendants lack sufficient information or knowledge to form a belief as to the allegations contained in Paragraph 17 and therefore deny the same.

18.    Defendants lack sufficient information or knowledge to form a belief as to the allegations contained in Paragraph 18 and therefore deny the same.

19.    Defendants lack sufficient information or knowledge to form a belief as to the allegations contained in Paragraph 19 and therefore deny the same.

20.    Defendants lack sufficient information or knowledge to form a belief as to the allegations contained in Paragraph 20 and therefore deny the same.

21.    Defendants lack sufficient information or knowledge to form a belief as to the allegations contained in Paragraph 21 and therefore deny the same.

22.    Defendants lack sufficient information or knowledge to form a belief as to the allegations contained in Paragraph 22 and therefore deny the same.

23.    Defendants admit that Hillig, through DH, had an agreement with Glen Bilbo to provide procurement services related to ECL's Glendale resort. When VAI took over the resort project, VAI opted to assume the terms of DH's agreement with ECL to provide procurement services with respect to the resort. Defendants admit that, pursuant to the agreement between VAI and DH, DH sent VAI an invoice on or around February 28, 2022, in the amount of $7,418,763.57.

24.    Defendants admit the allegations contained in Paragraph 24.

25.    Defendants admit the allegations contained in Paragraph 25.

26.    Defendants deny the allegations contained in Paragraph 26.

27.    Defendants deny the allegations contained in Paragraph 27. Defendants allege that Hillig agreed only to continue performing under the agreement DH made with Bilbo/ECL, the terms of which VAI agreed to adopt.

28.    In response to Paragraph 28, Defendants deny that such a conversation

3

10453169v2/43433-0001

occurred between Hillig, Shaylin Sommer, and Emily Young. Defendants allege that Hillig, Sommers, and Grant Fisher did discuss the fees VAI was to pay under its agreement with DH around August 2023, but that conversation was in light of the fact that VAI had asked DH to perform additional work not encompassed by the original scope of the previously agreed-upon 4% procurement fee.

29.    Defendants deny the allegations contained in Paragraph 29.

30.    Defendants deny the allegations contained in Paragraph 30.

31.    In response to Paragraph 31, Defendants admit that the 4% fee covered procurement services for Isle 8 (in addition to the other "islands" on the resort property) but deny that the four percent fee included expenses related to logistics (such as freight management and the cost of freight). Defendants allege that those expenses were intended to be—and actually were—passed onto VAI and paid for by VAI outside of the 4% procurement fee.

32.    Defendants deny the allegations contained in Paragraph 32.

 a.    Defendants admit the allegations contained in Paragraph 32, subsection (a), but clarify that four DH designers worked out of the Chicago office, not three.

 b.    Defendants admit the allegations contained in Paragraph 32, subsection (b).

 c.    Defendants deny the allegations in Paragraph 32, subsection (c), to the extent they apply to travel costs incurred for Hillig personally. Defendants admit that VAI reimbursed travel costs related to DH employees who were traveling to conduct VAI-related business.

33.    In response to Paragraph 33, Defendants admit that a meeting occurred in January 2022 between Hillig, Tommy Fisher, and Grant Fisher, wherein the parties discussed DH's procurement services for VAI, potential design services, as well as Hillig's ownership interest in the VAI Resort.

34.    In response to Paragraph 34, Defendants admit that Hillig agreed to arrange

4

the requested design services and later hired designers to effectuate that agreement.

35. In response to Paragraph 35, Defendants deny that Dessin Haus was formed by Scott Hillig. Defendants admit that payments for design work after August 2024 were directed to Dessin Haus.

36. Defendants admit the allegations in Paragraph 36.

37. Defendants admit the allegations in Paragraph 37, except Defendants clarify that the last reimbursement for design team payroll was in April 2025, and that the design team at its height was composed of eleven designers and two sourcing employees.

38. Defendants admit the allegations in Paragraph 38.

39. Defendants deny the allegations in Paragraph 39.

40. Defendants deny the allegations in Paragraph 40.

41. In response to Paragraph 41, Defendants admit that DH entered into the warehouse lease for the benefit of VAI in January 2023.

42. In response to Paragraph 42, Defendants admit that VAI was billed for the referenced expenses.

43. Defendants admit the allegations contained in Paragraph 43 except as to the timeframe of the warehouse arrangement, which was from January 2023 to January 2024.

44. In response to Paragraph 44, Defendants admit that VAI took over operation and management of the warehouse in January 2024 and deny the remaining allegations.

45. In response to Paragraph 45, Defendants admit that a small portion of the warehouse space was used to store items for another client, but Defendants deny that this was done without VAI's consent and/or knowledge. Defendants affirmatively allege that DH discounted the monthly warehouse fee billed to VAI by the percentage of the warehouse square footage that was being used to house items for other clients and that that discount was reflected on the monthly invoices sent to VAI and in the amounts VAI actually paid to DH for the warehouse.

5

46.    Defendants deny the allegations in Paragraph 46.

47.    Defendants deny the allegations in Paragraph 47.

48.    Defendants deny the allegations in Paragraph 48.

49.    Defendants deny the allegations in Paragraph 49.

50.    Defendants deny the allegations in Paragraph 50.

51.    Defendants deny the allegations in Paragraph 51.

52.    Defendants deny the allegations in Paragraph 52.

53.    Defendants deny the allegations in Paragraph 53.

54.    Defendants lack sufficient information or knowledge to form a belief as to the allegations contained in Paragraph 54 and therefore deny the same.

55.    Defendants deny the allegations in Paragraph 55.

56.    Defendants deny the allegations in Paragraph 56.

57.    Defendants deny the allegations in Paragraph 57.

58.    Defendants deny the allegations in Paragraph 58.

59.    Defendants deny the allegations in Paragraph 59.

60.    Defendants deny the allegations in Paragraph 60.

61.    Defendants deny the allegations in Paragraph 61.

62.    In response to Paragraph 62, Defendants admit that VAI terminated Defendants' services but deny the remaining allegations contained therein.

63.    In response to Paragraph 63, Defendants admit that Hillig, Tommy Fisher, and Grant Fisher met and agreed that Hillig would receive ownership in the VAI Resort, and affirmatively allege that that in-person meeting took place in January 2022.

64.    In response to Paragraph 64, Defendants admit that Tommy Fisher offered Hillig a 3.00% ownership interest in the VAI Resort in exchange for Hillig's "sweat equity" (*i.e.*, coordinating, overseeing, managing, and directing procurement, design, and other services for the benefit of VAI Resort). Defendants deny the remaining allegations.

6

10453169v2/43433-0001

65.     In response to Paragraph 65, Defendants lack sufficient information or knowledge to form a belief as to the allegations contained therein and therefore deny the same.

66.     In response to Paragraph 66, Defendants admit that Hillig (in addition to his "sweat equity") agreed to forgo salary and profit that he would otherwise have been entitled to in exchange for a three percent (3.00%) ownership interest in VAI Resort. Defendants deny that the parties discussed a cash buy-in or other system of dollar-for-dollar "credits" towards a cash buy-in.

67.     Defendants admit the allegations in Paragraph 67.

68.     In response to Paragraph 68, Defendants lack sufficient information or knowledge to form a belief as to the allegations contained therein and therefore deny the same.

69.     Defendants deny the allegations in Paragraph 69.

70.     Defendants deny the allegations in Paragraph 70.

71.     Defendants deny the allegations in Paragraph 71.

72.     Defendants deny the allegations in Paragraph 72.

73.     Defendants deny the allegations in Paragraph 73.

74.     Defendants deny the allegations in Paragraph 74.

75.     Defendants deny the allegations in Paragraph 75.

76.     Defendants deny the allegations in Paragraph 76.

77.     Defendants deny the allegations in Paragraph 77.

78.     Defendants deny the allegations in Paragraph 78.

79.     In response to Paragraph 79, Defendants admit that on April 25, 2025, Hillig demanded that Tommy Fisher honor and document the parties' previous agreement.

80.     In response to Paragraph 80, Defendants admit that Tommy Fisher did not respond to Hillig's e-mail from April 25, 2025, and deny the remaining allegations.

7

81.    Defendants deny the allegations in Paragraph 81.

82.    Defendants deny the allegations in Paragraph 82.

83.    In response to Paragraph 83, Defendants lack knowledge to form a belief regarding what Lily Jack reported to VAI; however, Defendants deny that Hillig ever represented that he was a 20% owner in VAI to anyone.

84.    In response to Paragraph 84, Defendants admit that Hillig represented to others that he was a part-owner in the VAI Resort and deny the remaining allegations contained therein.

85.    In response to Paragraph 85, Defendants admit that Grant Fisher gave Hillig the title of President of Design and Development and deny the remaining allegations contained therein.

86.    Defendants admit the allegations in Paragraph 86.

87.    In response to Paragraph 87, Defendants deny that Hillig sought the title of President of Design and Development; rather, Defendants affirmatively allege that it was Grant Fisher's idea to give Hillig the title in order to provide clarity in Hillig's dealing with vendors regarding VAI-related business.

88.    Defendants deny the allegations contained in Paragraph 88.

89.    In response to Paragraph 89, Defendants admit that an authorized representative(s) of VAI told Hillig he could represent himself to others as an "investor" and/or "developer" of the VAI Resort.

90.    Defendants deny the allegations contained in Paragraph 90.

91.    Defendants incorporate and re-allege every paragraph as set forth above.

92.    In response to Paragraph 92, Defendants admit that VAI entered into an oral contract with Hillig regarding his ownership interest in VAI Resort, but Defendants deny that the purported terms alleged in Paragraph 92 were agreed to.

93.    Defendants deny the allegations contained in Paragraph 93.

8

10453169v2/43433-0001

94.    In response to Paragraph 94, Defendants admit that VAI initially agreed in writing to compensate DH for procurement services with a four percent procurement fee on items purchased for the VAI Resort. Defendants further admit that, as part of the agreement, DH and/or Dessin Haus were to pass off the costs of certain design-related expenses to VAI, including rental payments for the Chicago office space, salaries for Dessin Haus designers and sourcing employees, and warehouse costs (as discounted for space not specifically used for items related to the VAI Resort). Defendants deny the remaining allegations contained therein.

95.    Defendants deny the allegations in Paragraph 95.

96.    Defendants deny the allegations in Paragraph 96.

97.    Defendants deny the allegations in Paragraph 97.

98.    In response to Paragraph 98, Defendants deny any liability to Plaintiff under any legal theory.

99.    Defendants incorporate and re-allege every paragraph as set forth above.

100.    Paragraph 100 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants generally admit that all contracts in Arizona contain the implied covenant of good faith and fair dealing.

101.    Paragraph 101 is not a factual allegation directed towards Defendants and therefore no response is required except that Defendants deny the terms of the purported oral contract referenced above.

102.    In response to Paragraph 102, Defendants deny the existence of an oral contract containing the terms Plaintiff references herein, and therefore deny the remaining allegations.

103.    Defendants deny the allegations in Paragraph 103.

104.    Defendants deny the allegations in Paragraph 104.

105.    Defendants deny the allegations in Paragraph 105.

9

10453169v2/43433-0001

106. Defendants deny the allegations in Paragraph 106.

107. Defendants incorporate and re-allege every paragraph as set forth above.

108. In response to Paragraph 108, Defendants admit that Hillig was, at various points in their business relationship, acting as an agent of VAI.

109. Paragraph 109 is a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that the allegation is an accurate, but incomplete, summation of Arizona agency law.

110. In response to Paragraph 110, Defendants admit that Hillig received the title of President of Design and Development at VAI but deny that Hillig proactively sought that title.

111. In response to Paragraph 111, Defendants admit that Hillig received a VAI Resort e-mail address.

112. In response to Paragraph 112, Defendants admit Hillig used the title Grant Fisher gave to him when dealing with vendors and third parties, and affirmatively allege that VAI offered him that title in order to provide clarity in Hillig's dealings with vendors on behalf of VAI.

113. In response to Paragraph 113, Defendants admit Hillig represented himself as an owner of VAI Resort to third parties. Defendants deny that such representations were false or that such representations were otherwise wrongful.

114. In response to Paragraph 114, Defendants admit that Hillig represented to third parties that he had authority to make business deals on behalf of VAI because he, as the President of Design and Development for VAI, did have such authority.

115. In response to Paragraph 115, Defendants admit that VAI had (and asserted) some level of control over Hillig.

116. Defendants deny the allegations in Paragraph 116.

117. Defendants deny the allegations in Paragraph 117.

10

118.    Defendants deny the allegations in Paragraph 118.

119.    Defendants incorporate and re-allege every paragraph as set forth above.

120.    Defendants deny the allegations in Paragraph 120.

121.    Defendants deny the allegations in Paragraph 121.

122.    Defendants deny the allegations in Paragraph 122.

123.    Defendants deny the allegations in Paragraph 123.

124.    Defendants deny the allegations in Paragraph 124.

125.    Defendants deny the allegations in Paragraph 125.

126.    Defendants deny the allegations in Paragraph 126.

127.    Defendants deny the allegations in Paragraph 127.

128.    Defendants deny the allegations in Paragraph 128.

129.    Defendants deny the allegations in Paragraph 129.

130.    Defendants deny the allegations in Paragraph 130.

131.    Defendants deny the allegations in Paragraph 131.

132.    Defendants deny the allegations in Paragraph 132.

133.    Defendants incorporate and re-allege every paragraph as set forth above.

134.    Defendants deny the allegations in Paragraph 134.

135.    Defendants deny the allegations in Paragraph 135.

136.    Defendants deny the allegations in Paragraph 136.

137.    Defendants deny the allegations in Paragraph 137.

138.    Defendants deny the allegations in Paragraph 138.

139.    Defendants incorporate and re-allege every paragraph as set forth above.

140.    In response to Paragraph 140 (incorrectly numbered as Paragraph 135), Defendants deny the allegations contained therein.

141.    In response to Paragraph 141 (incorrectly numbered as Paragraph 136), Defendants admit that there is a dispute over Hillig's ownership interest in the VAI Resort.

11

10453169v2/43433-0001

142. In response to Paragraph 142 (incorrectly numbered as Paragraph 137), Defendants deny the allegations contained therein.

143. In response to Paragraph 143 (incorrectly numbered as Paragraph 138), Defendants admit that the Court has authority to declare the status and legal relationship of the parties but denies that such a declaration will resolve all the claims and counterclaims asserted by the parties.

144. In response to Paragraph 144 (incorrectly numbered as Paragraph 139), Defendants deny the allegations contained therein.

## AFFIRMATIVE AND OTHER DEFENSES

Defendants assert the following affirmative and other defenses without assuming any burden of production of proof that they would not otherwise have.

145. The Complaint fails to state a claim against Defendants for which relief can be granted.

146. Plaintiff fails to state a claim upon which relief may be granted by failing to satisfy the specific pleading requirements for its fraud claims against Defendant Hillig pursuant to Fed. R. Civ. P., Rule 9(b).

147. Plaintiff may lack standing or the legal capacity to maintain its claims against all or some Defendants.

148. Upon information and belief, Plaintiff's claims may be barred, in whole or in part, by lack of consideration or, alternatively, failure of consideration.

149. Upon information and belief, Plaintiff's claims may be barred, in whole or in part by the statute of limitations.

150. Upon information and belief, Plaintiff's claims may be barred, in whole or in part, by Plaintiff's prior material breach.

151. Upon information and belief, Plaintiff's claims are barred because, at all

12

10453169v2/43433-0001

relevant times, Defendants acted in good faith and have not violated any rights secured to Plaintiff under any federal, state, or local laws, rules, regulations, or guidelines.

152.    Upon information and belief, Plaintiff's claims may be barred, in whole or in part, by estoppel, waiver, or abandonment.

153.    Upon information and belief, Plaintiff's claims may be barred, in whole or in part, by modification, extinguishment, and termination.

154.    Upon information and belief, Plaintiff's claims may be barred, in whole or in part, by the doctrine of laches and unclean hands.

155.    Upon information and belief, Plaintiff's claims may be barred, in whole or in part, by Plaintiff's failure to mitigate damages or take reasonable steps to avoid damages.

156.    Upon information and belief, Plaintiff's claims may be barred, in whole or in part, by accord and satisfaction.

157.    Upon information and belief, the damages allegedly sustained by Plaintiff may have been caused or contributed to by the conduct of others for whom Defendants are not responsible.

158.    Upon information and belief, Plaintiff's claims may be barred, in whole or in part, by the economic loss rule.

159.    Upon information and belief, Plaintiff's claims may be barred, in whole or in part, by mutual mistake.

160.    Upon information and belief, Plaintiff's claims may be barred, in whole or in part, by unilateral mistake.

161.    Plaintiff's claims, or some of them, may lack substantial justification against Defendants so as to constitute frivolous and groundless litigation, and the commencement and maintenance of these claims may entitle Defendants to costs herein incurred, including reasonable attorneys' fees, costs, and expert fees as provided by A.R.S. §§ 12-341, 12-341.01, and/or 12-349.

13

## RESERVATION OF RIGHTS

Answering Defendants reserve the right to amend this Answer, to add additional defenses, to withdraw defenses, to add counterclaims, and to join additional parties.

WHEREFORE, having fully answered Plaintiff's Complaint, Defendants request that judgment be entered in their favor as follows:

A. Dismissing Plaintiff's Complaint with prejudice;

B. Awarding Defendants their attorneys' fees and costs pursuant to A.R.S. §§ 12-341, 12-341.01, and any other applicable rule or statute;

C. And such other and further relief as may be proper.

## COUNTERCLAIMS

Scott Hillig ("Hillig"), Dessin Haus Collective LLC ("Dessin Haus"), DH Companies, LLC ("DH") (collectively, "Counterclaimants") for their Counterclaims against Vai Resorts, LLC ("VAI"), Tommy Fisher, Candice Fisher, John Does I-X, Jane Does I-X, Black Corporations I-X, and ABC Partnerships I-X (collectively, "Counterdefendants") allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Hillig is an individual who, at all relevant times, was a resident and citizen of Virginia.

2. Dessin Haus is a Tennessee limited liability company registered to do business in Arizona, but whose members are citizens of Virginia.

3. DH is a Virginia limited liability company registered to do business in Arizona, but whose sole member is a citizen of Virginia.

14

10453169v2/43433-0001

4. Upon information and belief, VAI is an Arizona limited liability company authorized to do business in Arizona, and whose members are both residents and citizens of the State of Arizona.

5. Upon information and belief, Tommy Fisher is a resident and citizen of the State of Arizona.

6. Upon information and belief, Candice Fisher is a resident and citizen of the State of Arizona and was at all relevant times married to Tommy Fisher. All acts by Tommy Fisher relevant to the claims herein were done on behalf of the marital community.

7. At all relevant times, Tommy Fisher was an agent, owner, representative, or employee of VAI and acted on behalf of VAI.

8. VAI is vicariously liable for the acts/omissions of its employees, representatives, and agents, including Tommy Fisher, under theories of respondeat superior and agency.

9. John Does I-X, Jane Does I-X, Black Corporations I-X, and ABC Partnerships I-X (hereinafter "Fictitious Counterdefendants") are those persons and entities whose relationships to the named Counterdefendants and/or whose acts or omissions give rise to legal responsibility for the damages incurred by Counterclaimants, but whose true identifies are presently unknown to Counterclaimants. These persons and entities are hereby notified of Counterclaimants' intention to join them as Counterdefendants if and when additional investigation or discovery reveals the appropriateness of such joinder.

10. Upon belief, all Fictitious Counterdefendants were residents of the State of Arizona, and/or were organized and existing under the laws of Arizona and doing business in the State of Arizona; and/or were foreign corporations, businesses, etc., qualified to do business within the State of Arizona and were doing business therein at all relevant times.

11. Counterdefendants committed acts and/or omissions or caused events to occur in Maricopa County, Arizona.

15

10453169v2/43433-0001

12.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as complete diversity exists between the parties and the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000) exclusive of interest and costs.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

14.     Founded in 2005, DH is a Virginia-based firm specializing in project management and procurement services for furniture, fixtures, and equipment (FF&E) in the hospitality, commercial, residential, senior living, healthcare, and restaurant industries.

15.     Hillig is the sole member of DH.

16.     In late 2021, DH reached an agreement with ECL Glendale, LLC, regarding a new resort project in Glendale, Arizona, which would be comprised of multiple hotels, restaurants, shopping, and entertainment areas (the "Resort").

17.     ECL and DH agreed that DH would provide procurement services for the Resort in exchange for an (industry standard) four percent (4.00%) procurement fee.

18.     By late 2021, however, it became clear that ECL could not secure adequate financing for the Resort.

19.     In January 2022, Hillig learned that Tommy and Grant Fisher of Fisher Industries (a construction subcontractor working at the Resort) would be taking over the project from ECL, through their newly-formed entity, VAI.

The Oral Contract for a 3.00% Ownership Stake in VAI

20.     In light of the anticipated change in ownership, Hillig met with the Fishers in January 2022 to discuss DH's continued involvement in providing procurement services for the Resort.

21.     At the January 2022 meeting, the Fishers confirmed that VAI would assume DH's procurement contract with ECL.

16

10453169v2/43433-0001

22. In that initial meeting the Fishers also requested that Hillig help identify and manage outside design firms to assist with the Resort project.

23. It was also during this initial meeting with the Fishers that Hillig communicated his desire to receive a three percent (3.00%) ownership stake in VAI. Hillig specifically proposed a 3.00% ownership stake so that he could one day leave each of his three children with 1.00% ownership interest in VAI.

24. Tommy Fisher agreed to transfer a 3.00% from his personal ownership stake in VAI if Hillig—who, unlike the Fishers, had extensive knowledge and deep relationships within the hospitality industry—managed the design services for no additional salary, fee, or profit (the "2022 Oral Contract").

25. At no point in that January 2022 meeting did the Fishers suggest that Hillig come out of pocket to purchase the 3.00% ownership stake in VAI from Tommy Fisher— rather, the ownership stake would solely be earned through Hillig's "sweat equity" via his provision of procurement, management, and design services.

26. The Fishers, individually and on behalf of VAI, represented to Hillig that VAI's attorneys would amend VAI's operating agreement to reflect Hillig's 3.00% ownership stake.

27. Upon information and belief, VAI officially took sole ownership of the Resort on March 31, 2022.

28. Pursuant to the written procurement agreement with ECL that had now been assigned to VAI, DH continued to provide procurement services for the Resort (with the 4.00% procurement fee).

29. Pursuant to the 2022 Oral Contract, Hillig managed VAI's outside design teams.

30. Hillig would have normally charged a ten percent (10.00%) fee for managing the design teams.

17

31.    Per the terms of the 2022 Oral Contract, however, Hillig did not charge VAI a fee for managing the outside design firms.

<u>Modifications to the 2022 Oral Contract</u>

32.    Given the Fishers' inexperience in the hospitality industry—the Resort was their first foray into the hospitality sector—VAI relied heavily on Hillig and DH's services and guidance. But the Fishers continued to demand more and more services from Hillig beyond the initial scope of the 2022 Oral Contract as additional "sweat equity" to earn his 3.00% ownership interest in VAI.

33.    For instance, later in 2022, VAI requested that (rather than Hillig managing outside third-party design firms) DH consolidate the design services for the Resort and provide them at cost to VAI.

34.    Hillig agreed with Tommy Fisher (who at all times was acting on VAI's behalf) to modify the 2022 Oral Contract to provide the requested design services at cost.

35.    In accordance with this amended agreement, DH hired designers to complete the necessary design work.

36.    Eventually, Hillig brought in Dessin Haus, a design firm owned by his wife and daughter, to do the design work for the Resort. Dessin Haus hired eleven designers and two sourcing staff—all of whom worked exclusively on the Resort project.

37.    As agreed upon by the parties, DH (and later Dessin Haus) invoiced VAI for the costs related to the Resort designers, including payroll, rent for the office building, and necessary travel expenses. VAI reimbursed DH/Dessin Haus for these expenses, but Hillig did not charge—and VAI did not pay—any additional fee or salary to Hillig for procuring and managing the design services, as that was all part of Hillig's "sweat equity" in the Resort.

38.    In another example of VAI asking Hillig to provide services outside the scope of the original agreement, VAI later requested that DH also provide logistics and

18

warehousing services.

39.    Hillig again agreed with Tommy Fisher to amend their 2022 Oral Contract and provide logistics and warehousing services under the same arrangement as the design services (*i.e.*, DH would provide the services at cost, in exchange for Hillig's 3.00% ownership interest in VAI.)

40.    Accordingly, DH entered into a warehouse lease in January 2023 for the benefit of VAI and provided all warehouse services to VAI at cost, in exchange for—and relying upon Tommy Fisher's representation that—Hillig receiving a 3.00% ownership interest in VAI.

President of Design and Development

41.    In January 2023, Grant Fisher approached Hillig and offered to give Hillig the title of President of Design and Development at VAI.

42.    Grant told Hillig he would be given this title to avoid confusion with vendors and other third parties that were dealing with Hillig directly regarding VAI-related business.

43.    VAI also provided Hillig with a company e-mail address.

44.    Upon information and belief, other senior level executives at VAI were paid annual salaries of $500,000.00.

45.    Despite holding a comparable senior position at VAI, Hillig did not receive any sort of compensation for his services, as Hillig's contributions were done pursuant to his oral contract with Tommy Fisher for a 3.00% ownership stake.

Final Discussions Concerning Hillig's Ownership in VAI

46.    In light of the exorbitant construction costs on the Resort, VAI asked Hillig in the summer of 2023 to waive DH's 4.00% procurement fee, which DH agreed to do in order to keep Hillig's 3.00% ownership stake in VAI.

47.    From the time of the 2022 Oral Contract through January 2025, the Fishers repeatedly represented to Hillig that VAI's lawyers were "drawing up the paperwork" to

19

10453169v2/43433-0001

formally document his 3.00% ownership interest in VAI pursuant to the 2022 Oral Contract.

48.    Despite repeated promises and assurances, however, VAI never produced the amended operating agreement reflecting Hillig's 3.00% ownership stake in VAI.

49.    Meanwhile, Counterclaimants relied on the Fishers' and VAI's repeated promises and assurances to their detriment, ultimately forgoing millions of dollars in profits, service fees, management fees, salaries, and other compensation in exchange for the 3.00% ownership interest in VAI that the Fishers now claim Hillig is not entitled to.

50.    On January 17, 2025, Hillig e-mailed Tommy Fisher expressing his frustration that no written agreement documenting Hillig's ownership interest had been prepared.

51.    Tommy Fisher replied the following day, stating, "I will agree to 2% out of my % which would be approx. $25m value in construction costs to open and double to triple once we open and prove the model works. As soon as we close the financing at the end of this month I will have attorneys draft docs. There should be trust here forward and a work ethic by both of us." Tommy concluded: "I value you first as a friend and trust your expertise on hospitality and business.  I look forward to being your partner enjoying the success VAI can create for everyone who has helped make it possible."

52.    Later that same day, Hillig replied to Tommy Fisher that he did not want to reduce his ownership interest from 3.00% to 2.00% but that he would agree to do so if VAI got caught up on outstanding reimbursement amounts due and owing to DH and Dessin Haus. However, Hillig referred Tommy Fisher back to the 2022 Oral Contract, as subsequently modified, stating, "I don't think it's fair to have less ownership than what was agreed to plus come out of pocket to cover the costs when that was not part of the original agreement."

53.    VAI did not agree to (nor did it) get caught up on its outstanding bills, and thus Hillig did not reduce his ownership stake in VAI from 3.00% to 2.00%.

20

10453169v2/43433-0001

54.     Hillig met with the Fishers in Grant Fisher's office on February 7, 2025, to discuss the parties' ongoing relationship. At that meeting, the Fishers (again) promised Hillig that they were (finally) going to send over a contract formalizing Hillig's 3.00% ownership in VAI. No such written documentation was ever produced.

55.     VAI terminated its business relationship with Hillig, DH, and Dessin Haus effective May 12, 2025, and is now refusing to acknowledge Hillig's ownership stake in VAI.

56.     Upon information and belief, the Fishers deceived Counterclaimants into forgoing millions in profits, compensation, fees, etc., in exchange for an ownership stake in VAI that they never intended to convey.

## COUNTERCLAIM I
### Breach of Contract
### (Tommy Fisher & VAI)

57.     Counterclaimants reallege and reincorporate by reference all allegations above as though fully set forth herein.

58.     The 2022 Oral Contract between Hillig, Tommy Fisher, and VAI is a valid and enforceable agreement.

59.     The 2022 Oral Contract provided that Hillig was to manage outside design firms at no additional cost or compensation in exchange for a 3.00% ownership stake in VAI.

60.     The 2022 Oral Contract was later amended so that (in exchange for Hillig receiving a 3.00% ownership stake in VAI) DH and Dessin Haus would also provide design, freight, warehousing, and logistics services at cost to VAI.

61.     VAI later requested that DH forgo its 4.00% procurement fee, which DH agreed to do.

62.     For more than three years, Counterclaimants performed their obligations

21

10453169v2/43433-0001

under the 2022 Oral Contract (and subsequent amendments).

63.    VAI now claims Hillig has no ownership interest in VAI or the Resort.

64.    Through their actions as described above, VAI and Tommy Fisher have breached the 2022 Oral Contract.

65.    Tommy Fisher and VAI's actions have damaged Hillig, in an amount to be proven at trial.

66.    Because this claim arises under contract, Counterclaimants are entitled to an award of costs and attorneys' fees pursuant to A.R.S. §§ 12-341, 12-341.01, and any other applicable agreement, statute, or rule.

## COUNTERCLAIM II
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (Tommy Fisher and VAI)

67.    Counterclaimants reallege and reincorporate by reference all allegations above as though fully set forth herein.

68.    In Arizona, every contract—oral or written—contains an implied covenant of good faith and fair dealing.

69.    The 2022 Oral Contract contains an implied covenant of good faith and fair dealing.

70.    By engaging in the acts and omissions described herein, Tommy Fisher and VAI have deliberately and unfairly deprived Hillig of the expected benefits and reasonable expectations arising from the 2022 Oral Contract.

71.    As a direct and proximate result of Tommy Fisher's and VAI's breach of the implied covenant of good faith and fair dealing, Hillig has been damaged in an amount to be proven at trial.

72.    Hillig is entitled to recover his reasonable attorneys' fees and costs pursuant to A.R.S. §§ 12-341, 12-341.01, and other applicable state law or statute.

22

10453169v2/43433-0001

**COUNTERCLAIM III**
**Violation of the Arizona Consumer Fraud Act**
**(Tommy Fisher and VAI)**

73.     Counterclaimants reallege and reincorporate by reference all allegations above as through fully set forth herein.

74.     The Arizona Consumer Fraud Act, A.R.S. §§ 44-1521 to 44-1534, as amended (the "Act"), is intended to promote truthful business practices and to combat deceptive and fraudulent advertising in connections with the sale of merchandise.

75.     Pursuant to A.R.S. § 44-1522, "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."

76.     As defined by the Act, "merchandise" means any objects, wares, goods, commodities, intangibles, real estate or services.  A.R.S. § 44-1521(5).

77.     "Sale" means any sale, offer for sale or attempt to sell any merchandise for any consideration.  A.R.S. § 44-1521(7).

78.     Arizona case law has defined "merchandise" to include ownership interests in a limited liability company.

79.     As set forth herein, Tommy Fisher, individually and on behalf of VAI, used deceptive and/or fraudulent misrepresentations to induce Counterclaimants to give up valuable consideration in exchange for a 3.00% ownership interest in VAI.

80.     The actions of Tommy Fisher, individually and on behalf of VAI, constitute an unlawful practice(s) under the Act.

81.     Counterclaimants suffered significant financial damages as result of their

23

10453169v2/43433-0001

reliance on Tommy Fisher and VAI's fraudulent and deceptive practices, in an amount to be determined at trial.

82.     Tommy Fisher, individually and on behalf of VAI, knowingly and intentionally defrauded Counterclaimants, thus entitling Counterclaimants to an award of punitive damages.

## COUNTERCLAIM IV
### Fraudulent Misrepresentation
### (Tommy Fisher and VAI)

83.     Counterclaimants reallege and reincorporate by reference all allegations above as though fully set forth herein.

84.     Tommy Fisher, individually and on behalf of VAI, knowingly misrepresented to Hillig that he would give Hillig an ownership interest in VAI in exchange for Counterclaimants forgoing millions of dollars in fees, salaries, profits, etc.

85.     The foregoing material representation was false.

86.     Tommy Fisher and VAI knew that their misrepresentation to Hillig was intended to induce Hillig to save VAI millions of dollars during the construction process.

87.     Counterclaimants did not know that Tommy Fisher's misrepresentations—which were made for the benefit of Tommy Fisher and VAI—were false.

88.     Counterclaimants relied on Tommy Fisher's misrepresentations by agreeing to forgo millions of dollars in profits, fees, revenues, compensation, etc., for more than three years.

89.     Counterclaimants had a right to rely on Tommy Fisher's representations.

90.     Accordingly, Counterclaimants sustained significant financial damages, in an amount to be proven at trial.

91.     Tommy Fisher's misrepresentations were done with an evil mind and intent, sufficient to trigger an award of punitive damages under Arizona law.

24

## COUNTERCLAIM V
### Negligent Misrepresentation
### (Tommy Fisher and VAI)

92. Counterclaimants reallege and reincorporate by reference all allegations above as through fully set forth herein.

93. Tommy Fisher, individually and on behalf of VAI, failed to exercise reasonable care when he represented that Hillig would receive a 3.00% ownership stake in VAI in exchange for providing procurement, management, design, warehouse, and logistics services at or near cost to VAI.

94. Tommy Fisher, individually and on behalf of VAI, did not give Hillig a 3.00% ownership interest in VAI.

95. Counterclaimants relied on Tommy Fisher's (mis)representations to their detriment—ultimately forgoing millions of dollars in profits, compensation, fees, etc., for more than three years.

## COUNTERCLAIM VI
### Fraud in the Inducement
### (Tommy Fisher and VAI)

96. Counterclaimants reallege and reincorporate by reference all allegations above as though fully set forth herein.

97. During the negotiations of the 2022 Oral Contract, Tommy Fisher misrepresented that Hillig would receive a 3.00% ownership stake in VAI in exchange for Counterclaimants providing procurement, management, design, warehousing, and logistics services at or near cost.

98. Tommy Fisher's misrepresentations were done with the intent to induce Hillig to enter into the 2022 Oral Contract.

99. Tommy Fisher and VAI knew or should have known that their misrepresentations would (and did) induce Hillig to enter into the 2022 Oral Contract

25

10453169v2/43433-0001

because the promise of a 3.00% ownership stake in VAI was the only reason Hillig would agree to forgo millions of dollars in fees, profits, compensation, etc., from 2022 - 2025.

100. Tommy Fisher, individually and on behalf of VAI, knowingly and intentionally induced Counterclaimants through fraudulent misrepresentations to enter into the 2022 Oral Contract, thus triggering an award of punitive damages.

## COUNTERCLAIM VII
### Promissory Estoppel
### (Tommy Fisher and VAI)

101. Counterclaimants reallege and reincorporate by reference all allegations above as though fully set forth herein.

102. Tommy Fisher, individually and on behalf of VAI, promised Hillig he would receive a 3.00% ownership stake in VAI if Counterclaimants provided procurement, management, design, warehousing, and logistics services to VAI at or near cost.

103. It was reasonably foreseeable to Tommy Fisher and VAI that Counterclaimants would rely upon that promise to their detriment.

104. Counterclaimants justifiably relied upon this promise, and as a result, Counterclaimants incurred significant economic loss in an amount to be proven at trial.

## COUNTERCLAIM VIII
### Unjust Enrichment
### (Tommy Fisher and VAI)

105. Counterclaimants reallege and reincorporate by reference all allegations above as through fully set forth herein.

106. Counterdefendants have been enriched because they received more than three years of procurement, design, management, warehousing, and logistics services from Counterclaimants for a price that was substantially below market rates, without giving Hillig a 3.00% ownership interest in VAI.

10453169v2/43433-0001

107. Counterclaimants have been impoverished by rendering services for Counterdefendants without receiving adequate compensation in return.

108. Counterdefendants have no justification for their enrichment and Counterclaimants' corresponding impoverishment.

109. As a direct and proximate result of Counterdefendants' actions, Counterclaimants have been damaged in an amount to be determined at trial.

WHEREFORE, Counterclaimants Scott Hillig, Dessin Haus Collective LLC, and DH Companies, LLC pray for the following relief in their favor, jointly and severally, against Counterdefendants VAI Resort, LLC, Tommy Fisher, Candice Fisher, John Does I-X, Jane Does I-X, Black Corporations I-X, and ABC Partnerships I-X, as follows:

A.    For the Court to declare and find that Tommy Fisher and VAI breached the 2022 Oral Contract;

B.    For the Court to enter judgment in favor of Counterclaimants on all of their counterclaims;

C.    For the Court to award Counterclaimants their actual, consequential, and compensatory damages, in an amount to be proven at trial, but in an amount no less than 3.00% ownership interest in VAI;

D.    For an award of punitive damages against Tommy Fisher and VAI;

E.    For an award of Counterclaimants' reasonable attorneys' fees, costs, and other disbursements incurred and to be incurred herein pursuant to A.R.S. §§ 12-341, 12-341.01, 12-349, and any other statute, rule, or as otherwise permitted by law;

F.    For all other pre- and post-judgment interest on the foregoing sums at the highest rate available under Arizona law; and

G.    For such other and future relief as this Court deems equitable and proper.

27

RESPECTFULLY SUBMITTED this 3rd day of July, 2025.

GALLAGHER & KENNEDY, P.A.


By: */s/Lindsay G. Leavitt*
Lindsay G. Leavitt
Erin T. Jenkins
2575 East Camelback Road
Phoenix, Arizona 85016
*Attorneys for*
*Defendants/Counterclaimants*

28

10453169v2/43433-0001

<u>CERTIFICATE OF SERVICE</u>:

I certify that on this ** day of June, 2025, I electronically transmitted a PDF version of this document to the Clerk of the Court, using the CM/ECF System, for filing and transmitted a copy of this document via email to the following:

Christopher D. Lonn
Scott Frazier Frerichs
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ  85251-3693
lonn@sackstierney.com
frerichs@sackstierney.com
*Attorneys for Plaintiff*

By: */s/ Rebecca C. Lewis*
        Rebecca C. Lewis

29

10453169v2/43433-0001